```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
PEDRO COLLAZO,

                    Petitioner,

       -against-                        MEMORANDUM & ORDER
                                        10-CV-0406(JS)
PHILIP P. HEATH, Superintendent of
Sing Sing Correctional Facility,

                    Respondent.
----------------------------------X
APPEARANCES
For Petitioner:    Pedro Collazo, pro se
                   06-A-1536
                   Sing Sing Correctional Facility
                   354 Hunter Street
                   Ossining, NY 10562

For Respondent:    Karla L. Lato, Esq.
                   Suffolk County District Attorney's Office
                   200 Center Drive
                   Riverhead, NY 11901
```

SEYBERT, District Judge:

Pedro Collazo ("Petitioner") petitions this Court pro se for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the following reasons, his Petition is DENIED.

BACKGROUND

I. Factual Background

"On July 5, 2004, Petitioner was working as a doorman and bouncer at the Kactus Restaurant in Lake Ronkonkoma, New York." (Resp't's Resp., Docket Entry 18, ¶ 3.) After ejecting a patron, Ulices Islas-Garrido, Petitioner asked his girlfriend to bring Petitioner's loaded shotgun to the restaurant in case Garrido

returned to the restaurant to cause trouble. (Resp't's Resp. ¶ 18.) When Petitioner attempted to drive his car out of the parking lot at 2 a.m., Garrido used his truck to block Petitioner's car. (Resp't's Resp. ¶ 3.) Petitioner pointed his loaded shotgun at Garrido's truck and fired; Petitioner hit Garrido "square in the chest and caus[ed] his death." (Resp't's Resp. ¶ 3.) Petitioner fled the scene and according to his girlfriend, Petitioner threw the shotgun off a bridge into water. (Resp't's Resp. ¶ 3.) "On July 8, 2004, Petitioner surrendered at his attorney's office and was charged with Murder in the Second Degree" in violation of New York Penal Law ("N.Y.P.L.") § 125.25(2). (Resp't's Resp. ¶ 3.)

II. Procedural Background

On February 2, 2005, Petitioner pleaded guilty to Manslaughter in the First Degree in exchange for a prison sentence of fourteen years. (Resp't's Resp. ¶ 4; see also Feb. 2, 2005 Minutes of Disposition "Plea Tr." 2:11-3:7; Plea Tr. 21:5-10.) During the plea agreement hearing, the court, before accepting Petitioner's guilty plea, asked Petitioner a series of questions.[1]

> The Court: First of all, is this what you want to do?
>
> Petitioner: Yeah. I guess so. (Plea Tr. 4:16-18.)

---

[1] Petitioner was sworn before answering the questions. (See Plea Tr. 3:25-4:2.)

. . .

>The Court: Have you discussed this matter with your attorney[?]
>
>Petitioner: Yes.  (Plea Tr. 4:25-5:4.)
>
>. . .
>
>The Court: Are you satisfied [with] the manner in which [your attorney] has represented you in this case?
>
>Petitioner: Yeah.  (Plea Tr. 5:9-12.)
>
>. . .
>
>The Court: Are you entering this plea bargain, including the waiver of your right to appeal, voluntary[ily] and of your own free will?
>
>Petitioner: Yes.  (Plea Tr. 7:6-10.)
>
>. . .
>
>The Court [regarding the medication Petitioner was taking while in prison]: [I]t doesn't impact your ability to make decisions?
>
>Petitioner: I don't think so.[2]  (Plea Tr. 8:23-25.)

After Petitioner answered the court's and the prosecutor's questions, the court accepted Petitioner's guilty plea.  (Plea Tr. 21:19-21.)

After the plea agreement hearing, Petitioner, with new

---

[2]  The Court: But you have been taking it for seven months and haven't had any difficulty with that?

Petitioner: No.  (Plea Tr. 9:2-5.)

counsel, sought to withdraw his guilty plea arguing: (i) his original counsel did not adequately prepare a defense and refused to proceed to trial without payment and (ii) his plea was invalid because of the medication he was taking while in prison. (Resp't's Resp. ¶ 5.) On February 16, 2006, the court denied Petitioner's motion to withdraw. People v. Collazo ("Collazo I"), 11 Misc. 3d 1052(A), 10, 814 N.Y.S.2d 892, (N.Y. County Ct. 2006). In response to Petitioner's ineffective assistance of counsel claim, the court held Petitioner's "attorney negotiated a very advantageous plea arrangement[,] which eliminated his client's exposure to much more severe incarceration. . . . Moreover . . . [Petitioner] swore he was satisfied with his attorney's performance." Id. at 7. As to Petitioner's waiver claim, the court held the plea agreement hearing transcript "demonstrate[d] [Petitioner's] knowing, active participation in the process".[3] Id. at 6. On March 8, 2006, the court sentenced Petitioner to an agreed-upon fourteen-year incarceration and five years of supervised release. (Sentencing

---

[3] After reviewing the Petitioner's responses at the hearing, the court held, additionally, that: "[Petitioner] had sufficient time to discuss the plea with his attorney . . . [;][Petitioner] understood the rights he was waiving; [] [Petitioner] was entering into the plea . . . voluntarily; [Petitioner] was pleading guilty because he was in fact guilty; . . . [Petitioner] rejected an additional opportunity to supply any reason why the plea should not be accepted[;] and . . . [Petitioner] offered his plea of guilty." Collazo, 814 N.Y.S.2d 892, at 8 (emphasis in original).

4

Tr. 9:9-13.)

Petitioner appealed the judgment to the Appellate Division, Second Department, which on November 27, 2007, affirmed the judgment. People v. Collazo ("Collazo II"), 45 A.D.3d 857, 857, 845 N.Y.S.2d 757 (2d Dep't 2007). The Second Department held that "[t]he decision whether to permit a defendant to withdraw a previously-entered plea of guilty rests within the sound discretion of the court[.]" Id. (internal citations omitted). The Second Department held, additionally, that "the record reflects that [Petitioner's] plea of guilty was knowingly, intelligently, and voluntarily entered[.]" Id. (internal citations omitted). Finally, it held Petitioner received effective assistance of counsel. Id. Petitioner applied for leave to appeal to the New York Court of Appeals, which denied the application on August 7, 2008. People v. Collazo ("Collazo III"), 10 N.Y.3d 763, 763, 883 N.E.2d 1259, 854 N.Y.S.2d 324 (N.Y. 2008).

Petitioner filed a motion to vacate in county court, which the court denied.[4] (See Resp't's Resp. ¶ 7.) Petitioner filed a petition for a writ of coram nobis in the Second

---

[4] "The County Court held that all but one issue raised in [P]etitioner's motion were previously raised on appeal and determined on the merits. As to the new violation of his constitutional rights . . . [the court] found [the issue] to be a record-based claim and [it] should have been raised on direct appeal." (See Resp't's Resp. ¶ 7, D.E. 18.)

5

Department, which argued that he was denied effective assistance of counsel as to his appellate counsel. (See Resp't's Resp. ¶ 8.) The Second Department denied the petition because "[Petitioner] failed to establish that he was denied the effective assistance of appellate counsel." People v. Collazo ("Collazo IV"), 60 A.D.3d 965, 965, 874 N.Y.S.2d 825 (N.Y. App. Div. 2d Dep't 2009).

Petitioner filed another petition for a writ of coram nobis in the Appellate Division, Second Department, which argued that he was denied effective assistance of counsel as to his appellate counsel. (See Resp't's Resp. ¶ 9.) The Appellate Division denied the petition because "[Petitioner] failed to establish that he was denied the effective assistance of counsel." People v. Collazo ("Collazo V"), 68 A.D.3d 779, 779, 888 N.Y.S.2d 909 (2d Dep't 2009). Petitioner applied for leave to appeal to the New York Court of Appeals, which denied the application on January 29, 2010. People v. Collazo ("Collazo VI"), 13 N.Y.3d 938, 938, 922 N.E.2d 917, 895 N.Y.S.2d 328 (N.Y. 2010).

III. The Petition

Petitioner argues that he was denied his rights to: (i) effective assistance of counsel, under the Sixth Amendment, when his trial attorney refused to assist him; (ii) effective assistance of counsel and a fair and impartial trial, under the Sixth Amendment, when the trial court refused to appoint new trial

6

counsel; (iii) due process, under the Fourteenth Amendment, as Petitioner's plea was not knowing, voluntary, or intelligent; (iv) due process, under the Fourteenth Amendment, as to the trial court's alleged Brady violation; and (v) effective assistance of counsel, under the Sixth Amendment, as to Petitioner's appellate counsel. (Pet. ¶ 12 at 6-13, D.E. 1.)

DISCUSSION

I. Legal Standard

"The writ of habeas corpus stands as a safeguard against imprisonment of those held in violation of the law." Harrington v. Richter, --- U.S. ----, 131 S. Ct. 770, 780, 178 L. Ed. 2d 624 (2011).

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus [on] behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(a).

A federal court may grant a writ of habeas corpus to a state prisoner when prior state adjudication of the prisoner's case "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States." Id. § 2254(d)(1). "This is a difficult to meet, and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." Cullen v. Pinholster, --- U.S. ----, 131 S. Ct. 1388, 1398, 179 L. Ed. 2d 557 (2011) (internal citations and quotation marks omitted).

During a review of a petition for a writ of habeas corpus, federal courts presume that the state court's factual determinations are correct. See 28 U.S.C. § 2254(e)(1).

A. Exhaustion

1. Standard

A state prisoner seeking federal habeas review of his state conviction is required to first exhaust all remedies available to him in state court. See 28 U.S.C. § 2254(b)(1)(A). "Exhaustion requires a petitioner fairly to present the federal claim in state court." Jones v. Keane, 329 F.3d 290, 294 (2d Cir. 2003). Presentation means a petitioner "has informed the State court of both the factual and the legal premises of the claim he asserts in Federal court." Id. at 295 (internal quotation marks and citations omitted).

II. Grounds One and Five: Ineffective Assistance of Counsel

A. Standard

"It has long been recognized that the right to counsel is

the right to the effective assistance of counsel." McMann v. Richardson, 397 U.S. 759, 771 n.14, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970) (citing Reece v. Georgia, 350 U.S. 85, 90, 76 S. Ct. 167, 170, 100 L. Ed. 77 (1955); Glasser v. United States, 315 U.S. 60, 69-70, 62 S. Ct. 457, 464-65, 86 L. Ed. 680 (1942); Avery v. Alabama, 308 U.S. 444, 446, 60 S. Ct. 321, 84 L. Ed. 377 (1940); Powell v. Alabama, 287 U.S. 45, 57, 53 S. Ct. 55, 59-60, 77 L. Ed. 158 (1932)).

"[T]he proper standard for attorney performance is that of reasonably effective assistance[;] . . . the defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland v. Washington, 466 U.S. 668, 687-88, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Id. at 688.

"[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound [] strategy." Id. at 689 (internal quotation marks and citation omitted); see also Forbes v. United States, 574 F.3d 101, 106 (2d Cir. 2009) (applying Strickland to appellate counsel). "[Appellate] counsel does not have a duty to

9

advance every non[-]frivolous argument that could be made." Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994) (citing Jones v. Barnes, 463 U.S. 745, 754, 103 S. Ct. 3308, 3314, 77 L. Ed. 2d 987 (1983)).

"Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." Blackledge v. Allison, 431 U.S. 63, 74, 97 S. Ct. 1621, 52 L. Ed. 2d 136 (citing Machibroda v. United States, 368 U.S. 487, 495-96, 82 S. Ct. 510, 514, 7 L. Ed. 2d 473 (1962); Price v. Johnston, 334 U.S. 266, 286-87, 68 S. Ct. 1049, 1060-61, 92 L. Ed. 1356 (1948)). When seeking post-conviction relief, "a court must presume that the proceedings were correct, and the burden of showing otherwise rests on the petitioner." United States v. Mandanici, 205 F.3d 519, 524 (2d Cir. 2000) (citing Nicks v. United States, 955 F.2d 161, 167 (2d Cir. 1992)).

B. Analysis

1. Trial Counsel

As previously noted, the Court asked Petitioner about his trial counsel's representation.

> The Court: Have you discussed this matter with
> your attorney . . . .[?]

> Petitioner: Yes. (Plea Tr. 4:25-5:4.)
>
> . . .
>
> The Court: Are you satisfied [with] the manner [in] which [your attorney] has represented you in this case?
>
> Petitioner: Yeah. (Plea Tr. 5:9-12.)

Petitioner stated explicitly that he was satisfied with his trial attorney. Petitioner fails to overcome the presumption that his sworn testimony was true. See Blackledge, 431 U.S. at 74. Moreover, the county court, in denying Petitioner's motion to withdraw his plea, noted that "following months of appearances, [Petitioner's trial] attorney negotiated a very advantageous plea arrangement which eliminated his client's exposure to much more severe incarceration." Collazo I, 11 Misc. 3d 1052(A) at 9. The Second Department held that Petitioner received effective assistance of counsel. The Court agrees. The Second Department's ruling was reasonable and did not misapply Federal law. Petitioner's claim as to his trial counsel is DENIED.

2. Appellate Counsel

Petitioner's claim regarding his appellate counsel's representation is meritless. Petitioner pleaded guilty. As held below, Petitioner's plea foreclosed the possibility of a Brady violation in the present case; thus, assuming, arguendo,

ineffective assistance occurred, it lacked prejudice. Moreover, appellate counsel did not have the duty to file frivolous claims. See Mayo, 13 F.3d at 533. The Second Department twice denied Petitioner's claim of ineffective appellate counsel. Collazo IV, 60 A.D.3d 965; Collazo V, 68 A.D.3d at 780. The Court finds the Second Department's holdings did not unreasonably apply Federal law. Petitioner's claim as to his appellate counsel is DENIED.

III. Ground Two: Trial Court's Refusal to Appoint New Counsel

Petitioner claims that he pleaded guilty because the trial court refused to appoint CJA-counsel and Petitioner could not afford to pay another attorney. (See Pet. ¶ 12 at 7.) As recounted: (i) Petitioner affirmed that he was satisfied with his attorney's representation (see Plea Tr. 5:9-12); (ii) Petitioner wrote a pre-plea letter to the trial judge that asked the Judge to approve a plea deal so "justice would be served" (see infra 14; see also Collazo I, 11 Misc. 3d 1052(A) at 8); and (iii) Petitioner affirmed his plea was voluntary. (Plea Tr. 7:6-10.) Petitioner fails to overcome the presumption that his sworn testimony is correct. The Court DENIES Petitioner's claim.

IV. Ground Three: Involuntary Waiver

A. Standard

"In the absence of special circumstances, the validity of a plea of guilty is determined by reference to whether it was

intelligent and voluntary." Miller v. Angliker, 848 F.2d 1312, 1320 (2d Cir. 1988) (citing Brady v. United States, 397 U.S. 742, 90 S. Ct. 1463, 25 L. Ed. 2d 747 (1970); Boykin v. Alabama, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969)). "As a general matter, a plea is deemed 'intelligent' if the accused had the advice of counsel and understood the consequences of his plea, even if only in a fairly rudimentary way; it is deemed 'voluntary' if it is not the product of actual or threatened physical harm, mental coercion overbearing the defendant's will, or the defendant's sheer inability to weigh his options rationally." Id. (citing Brady, 397 U.S. at 750, 90 S. Ct. at 1470).

B. Analysis

During the plea hearing, Petitioner affirmed, under oath, that no one had threatened, forced, or coerced him to accept the plea bargain. (See Plea Tr. 7:16-18.) Petitioner affirmed he understood the ramifications of accepting the plea bargain. (See, e.g., Plea Tr. 5:14-7:2.) Regarding his medication, Petitioner affirmed that he did not think it was impacting his ability to make decisions. (See Plea Tr. 8:23-9:5.) When asked by the court if "[he] was pleading guilty because [he was] in fact guilty", Petitioner answered affirmatively. (See Plea Tr. 12:19-21.)

After telling the prosecutor that his gunshots were accidental (Plea Tr. 18:13-17), Petitioner admitted that he pointed

13

his gun at Garrido, intentionally pulled the gun's trigger, and intended to kill Garrido. (Plea Tr. 19:13-20:7.) Before accepting the plea, the court informed Petitioner that he could not withdraw his guilty plea once the court accepted it. After this warning, Petitioner pleaded guilty. (Plea Tr. 21:11-18.)

In rejecting Petitioner's motion to withdraw his plea, the county court (presided over by the same judge, Judge Ralph Gazzillo, who oversaw Petitioner's criminal case) noted that Petitioner sent a "pre-plea, unsolicited letter" to Judge Gazzillo wherein Petitioner "attempted to persuade [Judge Gazzillo]" to accept Petitioner's plea agreement. Collazo I, 11 Misc. 3d 1052(A) at 8-9. The county court held, additionally, that the record (and the judge's own recollection) "demonstrate[d] [Petitioner's] appropriate, consistent, quick, crisp, and unequivocal answers, thereby demonstrating his understanding, knowing, and voluntary participation in the process." Id. at 5. Petitioner wanted a plea agreement; he received, and accepted, a plea offer. Petitioner cannot now claim he did not make such an agreement as a way to avoid the agreement he clearly sought.

The Second Department held that "the record reflects that [Petitioner's] plea of guilty was knowingly, intelligently, and voluntarily entered." Collazo, 45 A.D.3d 857. The Court concurs. The record is clear that Petitioner knowingly accepted his guilty

14

plea. The Appellate Division's ruling was clearly reasonable and did not misapply Federal law. Petitioner's claim is DENIED.

V. Ground Four: Brady Violation

A. Standard

The "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady v. Maryland, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

"Such evidence is material 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" Strickler v. Greene, 527 U.S. 263, 280, 119 S. Ct. 1936, 144 L. Ed. 2d 286 (1999) (quoting United States v. Bagley, 473 U.S. 667, 682, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1985)).

"Objections to the nature of the evidence obtained by and available to the prosecution will not survive a plea of guilty and are not available on an application for a writ of habeas corpus." U. S. ex rel. Mendez v. Fish, 259 F. Supp. 146, 148 (S.D.N.Y. 1965) (citing United States ex rel. Boucher v. Reincke, 341 F.2d 977, 980-91 (2d Cir. 1965); United States v. Salzano, 241 F.2d 849 (2d Cir. 1957) (per curiam); Winston v. United States, 224 F.2d 337 (2d Cir. 1955)(per curiam); United States v. State of Louisiana ex rel.

15

Miles v. Walker, 222 F. Supp. 975 (E.D. La. 1963)).

   B.  Analysis

   Petitioner pleaded guilty and, therefore, Brady objections are not available for review. Fish, 259 F. Supp. at 148. Petitioner admitted that he intentionally shot Garrido and that he was guilty. (See, e.g., Plea Tr. 12:19-21.) Any further evidentiary disclosure, therefore, would not have changed the disposition of the underlying case. See Strickler, 527 U.S. at 280. Petitioner's claim is DENIED both procedurally and substantively.

VI. Evidentiary Hearing

   A.  Standard

   During a habeas review, "[t]he granting of a[n] [evidentiary] hearing is within the discretion of the District Court[.]" Thomas v. Arizona, 356 U.S. 390, 403, 78 S. Ct. 885, 892, 2 L. Ed. 2d 863 (1958) (citing Brown v. Allen, 344 U.S. 443, 463-65, 73 S. Ct. 397, 410-11, 97 L. Ed. 469 (1953)).

   B.  Analysis

   Petitioner seeks an evidentiary hearing "to develop the factual basis of the [Brady] violation and ineffective counsel claims raised in the Habeas Corpus petition[.]" (Mot. to Compel, Docket Entry 41, ¶ 2.) For the reasons set forth above, such a hearing could not advance the Petition as Petitioner's claims are

16

meritless. The Court DENIES Petitioner's motion.

VII. Motions for Stay and Abeyance; Discovery

    A. Standard

        1. Stay and Abeyance

"[A] district court might stay the petition and hold it in abeyance while the petitioner returns to state court to exhaust his previously unexhausted claims. Once the petitioner exhausts his state remedies, the district court will lift the stay and allow the petitioner to proceed in federal court." Rhines v. Weber, 544 U.S. 269, 275-76, 125 S. Ct. 1528, 1534, 161 L. Ed. 2d 440 (2005). "[S]tay and abeyance should be available only in limited circumstances . . . . [S]tay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court." Id. at 277.

        2. Discovery

"A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." Bracy v. Gramley, 520 U.S. 899, 904, 117 S. Ct. 1793, 1796-97, 138 L. Ed. 2d 97 (1997); see also Drake v. Portuondo, 321 F.3d 338, 346 (2d Cir. 2003). Pursuant to the Rules Governing Section 2254 Cases in the United States District Courts, "[a] judge may, for good cause, authorize a party to conduct discovery under

17

the Federal Rules of Civil Procedure and may limit the extent of discovery."

B. <u>Analysis</u>

The Court denies Petitioner's motion to stay and Petitioner's motion for discovery. Petitioner pleaded guilty; state courts, and this Court, found that Petitioner made his plea knowingly, intelligently, and voluntarily. No good cause exists to permit Petitioner to use the Court's, or the Respondent's, time to conduct discovery, nor will justice be served by permitting a stay and abeyance. Discovery will not overturn Petitioner's sworn statement that he pointed the gun at Garrido, intended to kill Garrido, and did, in fact, kill Garrido. (<u>See, e.g.</u>, Plea Tr. 19:13-20:6.) Petitioner pleaded guilty to Manslaughter in the First Degree. (<u>See</u> Plea Tr. 21:5-10.) "A person is guilty of Manslaughter in the First Degree when: . . . 2. With intent to cause the death of another person, he causes the death of such person . . . under circumstances which do not constitute murder because he acts under the influence of extreme emotional disturbance." N.Y. PENAL LAW § 125.20. Petitioner's discovery requests would not disprove that he met this definition. Indeed, the prosecution asked Petitioner, at the plea hearing, if he intentionally killed Garrido because Petitioner was in an emotional state caused by Petitioner being scared for his girlfriend and

18

unborn child's life (as his pregnant girlfriend was in the car with Petitioner at the time of the shooting). (Plea Tr. 20:8-13.) Petitioner admitted he was scared at the time. (Plea. Tr. 20:14.) This admission fits the definition of Manslaughter in the First Degree. Discovery will not further Petitioner's case.

<u>CONCLUSION</u>

For the reasons set forth above, Petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is DENIED. Because there can be no debate among reasonable jurists as to whether Petitioner was entitled to habeas relief, the Court does not issue a Certificate of Appealability. 28 U.S.C. § 2253(c); <u>see also</u> <u>Middleton v. Att'ys Gen.</u>, 396 F.3d 207, 209 (2d Cir. 2005).

The Clerk of the Court is directed to mail a copy of this Memorandum and Order to the <u>pro</u> <u>se</u> Petitioner and to mark this matter CLOSED.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:  March __3__, 2014
        Central Islip, NY